**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| ⸻⸻⸻⸻⸻⸻ ) | |
| United States of America,        ) | |
|                                  ) | |
|          Plaintiff,              ) | |
|                                  ) | |
|          v.                      ) | |
|                                  )   Criminal Action No. |
| Junito Melendez, a/k/a Junior    )   99-40016-NMG |
| Melendez,                        ) | |
|                                  ) | |
|          Defendant.              ) | |
| ⸻⸻⸻⸻⸻⸻ ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Junito Melendez ("defendant" or "Melendez") has moved to reduce his sentence pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 ("the First Step Act" or "the FSA").

To this Court's knowledge, defendant's motion presents an issue of first impression in this circuit: whether relief under the First Step Act is available to a defendant who has already served the sentence as to which he seeks reduction when, as a result of that sentence, defendant faces an increased mandatory minimum sentence if he is convicted for a pending subsequent offense.

-1-

I. **Background**

A. **2001 Sentence**

In August, 1999, Melendez was indicted, as a juvenile, on one count of possession with intent to distribute and distribution of 19.2 grams of cocaine base (Count 1) and one count of possession of a firearm (Count 2). Pursuant to a superseding indictment filed in January, 2000, Melendez was charged with an additional count of possession with intent to distribute 3.3 grams of cocaine base, this time as an adult (Count 3).

Following a three-day jury trial conducted by this judicial officer in December, 2000, defendant was convicted on all counts. In April, 2001, this Court sentenced defendant, based on a total offense level ("TOL") of 30 and a criminal history category ("CHC") of IV, to 135 months imprisonment, the low end of the applicable guideline range. The Court also imposed a five-year term of supervised release.

Defendant appealed to the United States Court of Appeals for the First Circuit, arguing that this Court erred in denying his motions to suppress and to sever the juvenile counts of the indictment from the adult count. Melendez also asserted that the Court erred at sentencing by declining to depart downward

from the sentencing guidelines due to his role in the offense
and by improperly "double-counting" a prior conviction.

The First Circuit rejected Melendez's arguments relating to
the indictment and downward departure but concluded, with the
government's concession, that this Court had miscalculated
defendant's CHC by counting a single delinquency adjudication as
two separate convictions.  The First Circuit remanded for
resentencing.

In May, 2003, this Court concluded that, without the
double-counting, defendant was in CHC III and re-sentenced him
to 121 months, the low end of the newly-applicable guideline
range.

In June, 2006, this Court again reduced defendant's
sentence based on a change to his CHC.  The Massachusetts
Superior Court had vacated two of defendant's prior juvenile
convictions which had the effect of reducing his CHC from III to
I.  Based on a TOL of 30 and a CHC of I, the applicable
guideline range was 97-121 months.  Because of factors then
applicable and based on recommendations of both counsel, the
Court imposed a mid-range sentence of 109 months.  The oft-
amended sentence again included five years of supervised
release.  Defendant was released from the custody of the Bureau

of Prisons ("BOP") and his term of supervised release commenced in March, 2007.

Defendant violated the conditions of his supervised release on three separate occasions. In May, 2009, he associated with a known convicted felon and was sentenced to six months in prison, followed by three years of supervised release. In December, 2009, defendant violated Massachusetts law by trespassing and disturbing the peace. He was sentenced to four months in prison, followed by three years of supervised release, the first two months of which were to be served at a Community Confinement Center ("CCC"). Upon release after that revocation, defendant failed to report to the CCC which resulted in a third violation of his conditions of supervised release and an additional six-month term of imprisonment. No additional term of supervised release was imposed.

Defendant's 2001 sentence was, therefore, completed upon his discharge from BOP custody in December, 2010. That is the sentence for which he now seeks reduction pursuant to the FSA.

### B. Subsequent Criminal Conduct

Since December, 2010, defendant has committed several more crimes. In September, 2011, he was arrested and later convicted of threats and disorderly conduct. In October, 2013, he was arrested and charged with aggravated assault and battery with a

-4-

dangerous weapon and conspiracy to commit a drug offense.  He was later convicted of the aggravated assault and battery charge.  Finally, in December, 2018, defendant was arrested and charged with trespass and threats.  That case remains pending.

### C. Current Federal Charges

In March, 2019, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") installed a Title III wiretap on defendant's phone after United States District Judge Timothy S. Hillman found probable cause that defendant was engaged in firearm and controlled substance offenses.  ATF alleges that, after surveilling defendant for less than two weeks, agents gathered evidence of several new federal offenses.

In July, 2019, a grand jury returned two separate indictments, one charging defendant with conspiracy to commit a Hobbs Act robbery and the other charging defendant with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846.  With respect to the drug charge, the indictment alleges that 500 grams or more of cocaine were reasonably foreseeable and attributable to defendant, subjecting him to a mandatory minimum sentence of five years.  Both of those cases remain pending before Judge Hillman's session of this Court. See United States v. Melendez et al., 4:19-cr-40024-TSH (D. Mass. 2019)

-5-

(Hobbs Act conspiracy); United States v. Melendez et al., 4:19-cr-40025-TSH (D. Mass. 2019) (drug charge).

## II.  Motion for Relief Pursuant to the First Step Act

### A.   Statutory Framework

Congress enacted the Fair Sentencing Act in 2010 primarily to reform the penalty structure for crack cocaine offenses. Pub. L. No. 111-220, 124 Stat. 2373.  In furtherance of that goal, § 2 of the Fair Sentencing Act, among other things, lowered statutory penalties for crack cocaine offenses and increased the quantities of crack cocaine needed to initiate mandatory minimum sentences.  Those provisions did not, however, apply retroactively. Dorsey v. United States, 576 U.S. 260, 269, 281-82 (2012).

To address that concern, Congress enacted the First Step Act in 2018 which rendered several provisions of the Fair Sentencing Act retroactively applicable.  Relevant to Melendez's pending motion is § 404 of the First Step Act, which permits a court that "imposed a sentence for a covered offense" to reduce a defendant's sentence as if §§ 2 and 3 of the Fair Sentencing Act were in effect when the offense was committed. § 404(b).

A "covered offense" means

a violation of a Federal criminal statute, the
statutory penalties for which were modified by section
2 or 3 of the Fair Sentencing Act of 2010 (Public Law

-6-

111-220; 124 Stat. 2372), that was committed before
August 3, 2010.

§ 404(a).  Section 404 further provides that

[n]othing in [§ 404] shall be construed to require a
court to reduce any sentence pursuant to this section.

§ 404(c).

Also relevant to the pending motion are §§ 802(57) and

841(b)(1)(B)(ii) of Title 21 of the United States Code.

Pursuant to § 841(b)(1)(B)(ii),

[i]f any person commits [a violation of
§ 841(b)(1)(B)] after a prior conviction for a serious
drug felony or serious violent felony has become
final, such person shall be sentenced to a term of
imprisonment which may not be less than 10 years and
not more than life imprisonment . . . .

Section 802(57) defines a "serious drug felony" as

an offense described in section 924(e)(2) of title 18
for which (A) the offender served a term of
imprisonment of more than 12 months; and (B) the
offender's release from any term of imprisonment was
within 15 years of the commencement of the instant
offense.

**B.  Analysis**

The drug charge against defendant pending before Judge

Hillman involves conduct entirely distinct from the conviction

at issue in this case.  There is, however, a single connection:

the charge before Judge Hillman was commenced within 15 years of

defendant's release from serving his drug-related sentence of

more than one year in this case.  Pursuant to 21 U.S.C.

§§ 802(57) and 841(b)(1)(B)(ii), that connection results in

-7-

defendant being subject to an enhanced mandatory minimum sentence of ten years (instead of 5 years) for the drug charge pending before Judge Hillman.

Defendant maintains that if the FSA had been in effect when he was initially sentenced, he likely would have received a reduced sentence that he would have completed outside of the 15-year "window".  Consequently, he argues, he would not be subject to an enhanced mandatory minimum sentence in the case pending before Judge Hillman.  Defendant further contends that the language of the FSA plainly entitles him to such relief.  The government rejoins that the Court lacks jurisdiction to reduce defendant's sentence because the sentence has been served in full and, even if the Court did have jurisdiction, such a reduction is not in the interest of justice.

For the reasons explained below, the Court will deny defendant's motion for resentencing pursuant to the FSA because it lacks jurisdiction and, even if it had jurisdiction, it would decline to exercise its discretion to resentence defendant.

### 1.  Jurisdiction

The FSA was intended to provide relief to individuals who were convicted of a "covered offense" and sentenced to a term of imprisonment that Congress has now determined was not proportional to the crime of conviction.  There is, as defendant

-8-

notes, no textual limitation in the FSA that conditions eligibility for sentence reduction on "covered offenses" that are unexpired.  The Act places only two limitations on a court's authority to entertain a motion made thereunder: (1) the sentence for which reduction is sought must not have been imposed or previously reduced in accordance with §§ 2 and 3 of the Fair Sentencing Act and (2) the defendant must not have previously made a motion pursuant § 404 of the FSA that was denied on the merits. Pub. L. No. 115-391, § 404(c).

Notwithstanding the lack of any textual limitation barring the relief defendant seeks, the Court has an obligation to ensure that it maintains subject matter jurisdiction, which extends only to active cases or controversies. U.S. Const. art. III, § 2.  To that end, the Court must ensure that defendant "continue[s] to have a personal stake in the outcome" of this judicial proceeding. See United States v. Rene E., 583 F.3d 8, 19 (1st Cir. 2009).  When a defendant challenges an underlying conviction for which the sentence imposed has been completed, courts routinely presume collateral consequences sufficient to demonstrate a continuing stake in the outcome. Spencer v. Kemna, 523 U.S. 1, 11-12 (1998).  That presumption does not, however, apply to challenges to the completed sentence itself. Rene E., 583 F.3d at 19; see also Spencer, 523 U.S. at 14 ("We adhere to the principles announced in [Lane v. Williams, 455 U.S. 624

-9-

(1982)], and decline to presume that collateral consequences adequate to meet Article III's injury-in-fact requirement resulted from petitioner's parole revocation.").

Melendez submits that he can demonstrate a concrete collateral consequence resulting from resentencing because, if the Court reduces the subject sentence as requested, the completion date of that sentence will fall outside of the applicable 15-year "window".  The indictment pending before Judge Hillman alleges that the drug-related offense began in March, 2019.  Consequently, to fall outside of the 15-year window, defendant must demonstrate that he would have completed his sentence for the crime committed in 1999 no later than March, 2004.

Applying the current version of the United States Sentencing Guidelines ("the Sentencing Guidelines"), defendant calculates his base offense level ("BOL") as 22 by virtue of his being held accountable for 22.5g of cocaine base.  His BOL is increased by 2 levels for use of a firearm which results in a TOL of 24.  At CHC I, that results in a guideline range of 51-63 months.  Melendez presumes that the Court would have imposed a sentence of 51 months at the low end of that range.  He does not, however, provide the projected release date after such a reduced sentence or account for the several violations of his

term of supervised release which led to approximately 16 months of additional imprisonment.

As a preliminary matter, the Court is skeptical that the current version of the Sentencing Guidelines would apply at defendant's FSA resentencing.  The FSA does not authorize relief based on "plenary resentencing issues".  See, e.g., United States v. McKinney, 382 F. Supp. 3d 1163, 1165 (D. Kan. 2019) (collecting cases).  It merely permits the imposition of "a reduced sentence as though [the Fair Sentencing Act] were in effect at the time the covered offense was committed". § 404(b). Put differently, the statute does not account for intervening changes in the law (including amendments to the Sentencing Guidelines) other than the retroactive application of the Fair Sentencing Act.  As a result, it is unclear whether defendant would be entitled to the benefit of the several amendments to the Sentencing Guidelines that have already reduced the applicable guideline ranges since defendant was sentenced.

The Court is similarly unpersuaded that, even if the current Sentencing Guidelines were to apply, it would resentence defendant to a low-end guideline sentence given his recurrent criminal history and his several violations of supervised release.

-11-

Furthermore, even if the Court were to re-sentence defendant to 51 months imprisonment, it is doubtful that would provide the relief sought because of defendant's several violations of supervised release.  Defendant contends that the Court should disregard those violations for purposes of determining FSA eligibility but proffers no argument in support of that contention.  The "interdependent relationship" between custodial imprisonment, supervised release and any additional terms of imprisonment imposed for revocation thereof demonstrates that each is a "component[] of one unified sentence".  See United States v. Ketter, 908 F.3d 61, 65 (4th Cir. 2018).  Accordingly, the Court can discern no reason for ignoring any portion of the sentence served by defendant in determining eligibility for FSA relief.

Neither party proffers a workable solution for how the Court should calculate whether defendant would have completed the subject sentence, including the original custodial imprisonment and the additional terms of imprisonment imposed after the several revocations of supervised release, more than 15 years before he became subject to the pending charges before Judge Hillman.  In the absence of any guidance from the parties, the Court has determined that the most accurate method of doing so would be to shift the timeline of defendant's term of imprisonment back as though his supervised release commenced

-12-

after serving 51 months in prison and then calculating the
subsequent violations of supervised release at the same
intervals and with the same consequences as actually occurred.
In that scenario, defendant would have completed (1) his initial
term of imprisonment in December, 2002; (2) the term of
imprisonment for his first violation of supervised release in
August, 2005; (3) the term of imprisonment for his second
violation in December, 2005, and (4) the term of imprisonment
for his third violation in September, 2006.

Thus, even if defendant were entitled to First Step Act
relief and a revised sentence of 51 months, he has not
demonstrated that he would have completed that sentence,
including the terms of imprisonment imposed for violations of
supervised release, more than 15 years before commencement of
the offense conduct which is the subject matter of the case
pending before Judge Hillman.  Accordingly, defendant is unable
to establish a definitive collateral consequence of a reduction
of his already-completed sentence and the Court lacks
jurisdiction.

### 2. Discretion

Assuming arguendo that defendant could demonstrate that the
FSA applies and that the Court has jurisdiction to reduce his
sentence, the Court would, in its discretion decline to reduce

-13-

defendant's sentence.  The FSA provides that, even if a
defendant is eligible for resentencing, a sentencing court
maintains discretion to determine whether a reduction is
warranted. United States v. Smith, 954 F.3d 446, 452 (1st Cir.
2020) ("The First Step Act gives district courts discretion to
grant or deny a sentencing reduction.").  The FSA does not
provide any limitation on that discretion or identify any
factors that should or must be considered.

At his second revocation hearing for violating supervised
release, defendant assured this judicial officer that he was
"ready to move forward" and become an upstanding citizen.  With
apparent indifference, he proceeded to violate the conditions of
his supervised release yet again and has since been charged with
no less than six additional crimes.  Such conduct demonstrates a
propensity for recidivism and a lack of remorse for his unlawful
conduct.  As a result, the Court is dissuaded from exercising
its discretion in defendant's favor.

The Court also declines to exercise its discretion because
it concludes that the FSA does not contemplate relief under
these circumstances.  First, in essence defendant seeks to use a
reduction of his sentence for a "covered offense" as a means of
avoiding the prospect of an enhanced mandatory minimum for a
separate, subsequent offense that is not covered by the FSA.

-14-

But a reduced sentence under the FSA would not, alone, provide the relief defendant seeks unless that reduction causes defendant to fall outside of the applicable 15-year "window". Nothing in the FSA entitles defendant to such relief. See United States v. Martin, 03-cr-795 (BMC), 2019 WL 2289850 (E.D.N.Y. May 29, 2019) (declining to reduce defendant's already-completed sentence pursuant to the FSA where the defendant remained in federal custody for an unrelated offense and resentencing would have the effect of advancing defendant's release date); but see also United States v. Miles, 07-cr-00890 (APR) (E.D.N.Y. Apr. 25, 2019) (considering remarkably similar facts as Martin and holding that the FSA provided defendant with a statutory basis for reduction of his sentence given the collateral consequence of an earlier release date on a subsequent conviction).

Furthermore, to provide defendant with FSA relief under these circumstances would, in effect, render application of the FSA to an already-completed sentence dependent upon the indictment or conviction of a defendant for a subsequent and unrelated crime.  Indeed, if defendant were not subject to additional charges before Judge Hillman, he would be unable to describe any potential collateral consequences.  The application of the FSA cannot be dependent upon a defendant's proclivity toward crime. See Martin, 2019 WL 2289850, at *4("[H]ad

-15-

[defendant] filed his motion for a retroactive resentencing . . . while he was no longer incarcerated, I would have denied it outright as moot. The only difference between the latter hypothetical scenario and the facts before me is that defendant continued to commit crimes while he was in prison and by his own volition extended the term of his incarceration."); see also Spencer, 523 U.S. at 15-18 (holding, in the habeas context, that collateral consequences cannot be "contingent upon [a defendant's] violating the law, getting caught, and being convicted" because the prevention of such an occurrence is entirely within the defendant's control and is required by law).

Finally, as the preceding calculations of the Court demonstrate, it is only by virtue of defendant's several violations of supervised release and subsequent conduct that he now faces the application of the enhanced mandatory minimum sentence before Judge Hillman.  Had defendant abided by the terms of his supervised release, he may have persuaded the Court that definitive collateral consequences exist to warrant the reduction of his already-completed sentence in the event he could establish jurisdiction under the FSA.

Neither defendant's conduct, nor the underlying policy consideration convince the Court that it should reduce defendant's sentence pursuant to the FSA.  Accordingly,

defendant's motion for reduction of his sentence pursuant to the FSA will be denied because the Court has neither the jurisdiction nor the inclination to exercise its discretion to reduce defendant's sentence.

### ORDER

For the foregoing reasons, the motion of defendant for relief pursuant to the First Step Act (Docket No. 128) is **DENIED.**


**So ordered.**


<u>/s/ Nathaniel M. Gorton</u>
Nathaniel M. Gorton
United States District Judge


Dated May 27, 2020